IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIMOTHY WAYNE WILLIAMS,          :
                                 :
     Petitioner.                 :
                                 :
vs.                              :     CIVIL ACTION 15-0126-WS-M
                                 :
CYNTHIA STEWART,                 :
                                 :
     Respondent.                 :

REPORT AND RECOMMENDATION

        This is an action under 28 U.S.C. § 2254 by an Alabama

inmate that was referred for report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. Gen.L.R. 72(a)(2)(R), and

Rule 8 of the Rules Governing Section 2254 Cases.  This action

is now ready for consideration.  The state record is adequate to

determine Petitioner's claims; no federal evidentiary hearing is

required.  It is recommended that this habeas petition be denied

and that this action be dismissed.  It is further recommended

that any certificate of appealability filed by Petitioner be

denied as he is not entitled to appeal *in forma pauperis*.

Finally, it is recommended that judgment be entered in favor of

Respondent Cynthia Stewart and against Timothy Wayne Williams.

        Petitioner was convicted of first-degree rape in the Mobile

County Circuit Court on April 12, 2011 for which he received a

1

sentence of ten years in the state penitentiary (Doc. 1, p. 3; Doc. 6, pp. 1-2).

On May 12, 2011, Williams, who had a new attorney, filed a Motion to Set Aside the Judgment or, in the Alternative, Grant a New Trial, a Motion that was later amended (Doc. 6, Exhibit A, Volume 1, pp. 39-40, 46).  Following a hearing on one of the issues, the Motion was denied in its entirety (*see id.* at pp. 27-29).

With a new attorney, Williams appealed, but the Court of Criminal Appeals of Alabama affirmed the conviction and sentence on May 18, 2012 (Doc. 6, Exhibit D).  On November 30, 2012, the Supreme Court of Alabama affirmed the conviction (Doc. 6, Exhibit E); on the same date, the certificate of judgment was issued (Doc. 6, Exhibit F).

On May 17, 2013, Williams, with a new attorney, filed a State Rule 32 petition (Doc. 6, Exhibit G, pp. 15, 19-28).  It was denied on January 10, 2014 (*id.* at p. 38-43).  On August 1, 2014, the Alabama Court of Criminal Appeals affirmed the lower court's decision (Doc. 6, Exhibit J).  On October 10, 2014, the Alabama Supreme Court denied *certiorari* (Doc. 6, Exhibit K) and the Certificate of Judgment was issued (Doc. 6, Exhibit L).

With the aid of a new attorney, Petitioner filed a complaint with this Court on March 9, 2015, raising the claim

2

that his trial and appellate attorneys rendered ineffective assistance.  More specifically, Williams asserted that his trial attorney failed to:  (1) properly investigate the facts surrounding the incident for which he was convicted; and (2) call a corroborating witness to testify (Doc. 1).  He claims that his appellate attorney erred in not raising an ineffective assistance of counsel claim on appeal

On November 10, 2015, the undersigned entered a Report and Recommendation finding that Williams's claims were procedurally defaulted and that the Court was precluded from considering them as he had not overcome certain necessary procedural hurdles to overcome the default (Doc. 14).  Following Petitioner's Objection to that Report and Recommendation (Doc. 17), Chief United States District Judge Steele Ordered that this action be remanded to the undersigned for further consideration (Doc. 18).  In that Order, Steele acknowledged that Williams did not question the finding that his claims were procedurally defaulted; rather, Petitioner argued that he had demonstrated cause for that default and that he had been prejudiced and suffered a fundamental miscarriage of justice in this Court's failure to consider his claims (Doc. 18, p. 1; *cf*. Doc. 17).

As Williams does not challenge the finding that his claims are procedurally defaulted in the state courts (see Doc. 18, p.

3

1), it will be unnecessary herein to explain how those claims came to be considered defaulted.  It is noted, however, that where state courts have found claims of a petitioner to be procedurally defaulted and those courts have refused to address the merits of those claims, as is the case here, all chance of federal review is not precluded.  The Eleventh Circuit Court of Appeals, in addressing the review of these claims, has stated the following:

> Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and its progeny, noncompliance with a state procedural rule generally precludes federal habeas corpus review of all claims as to which noncompliance with the procedural rule is an adequate ground under state law to deny review.  If a petitioner can demonstrate both cause for his noncompliance and actual prejudice resulting therefrom, however, a federal court can review his claims.

*Booker v. Wainwright*, 764 F.2d 1371, 1379 (11ᵗʰ Cir.) (citations omitted), *cert. denied*, 474 U.S. 975 (1985).  A claimant can also avoid the procedural default bar if it can be shown that a failure to consider the claims will result in a fundamental miscarriage of justice.  *Engle v. Isaac*, 456 U.S. 107, 135 (1982); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In this action, Petitioner has argued that he demonstrated cause for that default and that he has been prejudiced and

suffered a fundamental miscarriage of justice in this Court's
failure to consider his claims (Doc. 18, p. 1; *cf.* Doc. 17).
Williams's arguments, and Judge Steele's remand, rely on the
United States Supreme Court decision, *Martinez v. Ryan*, --- U.S.
---, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), that held as
follows:

> **Where, under state law, claims of
> ineffective assistance of trial counsel must
> be raised in an initial-review collateral
> proceeding,** a procedural default will not
> bar a federal habeas court from hearing a
> substantial claim of ineffective assistance
> at trial if, in the initial-review
> collateral proceeding, there was no counsel
> or counsel in that proceeding was
> ineffective.

*Martinez*, 132 S.Ct. at 1320 (emphasis added).  That Court
defined *initial review collateral proceeding* as "collateral
proceedings which provide the first occasion to raise a claim of
ineffective assistance at trial."  *Martinez*, 132 S.Ct. at 1315.
*Martinez* went on to state the following:  "**Our holding here
addresses only** the constitutional claims presented in this case,
**where the State barred the defendant from raising the claims on
direct appeal**."  *Martinez*, 132 S.Ct. at 1320 (emphasis added).

Alabama's law, with regard to this issue, is different than
that of Arizona, the law considered in *Martinez*.  Under Alabama

law, "[a]ny claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable." Ala.R.Crim.P. 32.2(d).[1]  Case law demonstrates that this rule was the practice even before it was adopted.  *See Gray v. State*, 581 So.2d 1136 (Ala. Crim. App. 1990) ("Appellant's claim concerning ineffective assistance of counsel also should have been raised on direct appeal, since he was represented on direct appeal by different counsel; thus, it is also procedurally defaulted").

In this action following the conviction, Petitioner's new attorney, in his Motion for a New Trial, brought an ineffective assistance of counsel claim for the trial attorney's failure to call a particular fact witness to testify (Doc. 1, p. 7; *see* Doc. 6, Exhibit A, Volume 1, pp. 27-29).  On direct appeal, with a new attorney, no claim of ineffective assistance of counsel, against any attorney, was raised (*see* Doc. 6, Exhibit D). Because Petitioner had two different opportunities to raise his ineffective assistance of trial counsel claim before raising the claim on collateral review, *Martinez* is inapplicable here.[2]

---

[1]Williams acknowledges this Rule (Doc. 25, p. 5), though his arguments ignore—and argue against—its applicability in this action.
[2]Williams acknowledges that his appellate attorney could have raised the ineffective assistance of trial counsel claim, admitting, albeit unwittingly, that *Martinez* is inapplicable here (Doc. 25, pp. 2-3) ("Williams does not dispute that new trial counsel failed to properly represent him and to present and preserve the issue of

The undersigned finds that Williams has not demonstrated cause for his procedural default as required under *Wainwright*. *Martinez* is not applicable because Alabama does not require that a criminal defendant wait to raise a claim of ineffective assistance of trial counsel in his first Rule 32 petition.  The Supreme Court dictates that circumstance.  *Martinez*, 132 S.Ct. at 120 ("Where, under state law, claims of ineffective assistance of trial counsel **must** be raised in an initial-review collateral proceeding . . .").  *Martinez*, in this single sentence fragment, precludes the cause Petitioner seeks on the set of facts presented herein.  This Court has previously reached the same conclusion:

> The *Martinez* qualification does not automatically apply, however.  Most importantly here, *Martinez* by its terms applies only "[w]here, under state law, claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding" and cannot be raised on direct appeal.  132 S.Ct. at 1320 (emphasis added); *accord Hittson v. GDCP Warden,* ---F.3d ----, 2014 WL 3513033 at *42 (11th Cir.2014) ("[T]he *Martinez* exception to *Coleman*'s general rule is limited to circumstances where state law '*requires* a prisoner to raise an ineffective-assistance-

---

ineffectiveness of trial counsel for failure to investigate specifically, but Mr. Williams avers that the issue was sufficiently raised through the motion for new trial that appellant counsel could have raised it on appeal.  Appellant counsel could have argued that the Motion for New Trial was improperly denied but does not appear to have even addressed the same on direct appeal").

> of-trial-counsel claim in a collateral
> proceeding.'") (quoting *Martinez,* 132 S.Ct.
> at 1318) (emphasis added).

*Diggs v. Mitchem*, C.A. 03-0104-WS-M, 2014 WL 4202476, at *4

(S.D. Ala. August 22, 2014).[3]

Petitioner also seems to argue that *Martinez* is applicable

because of the unbroken string of attorneys representing him who

all committed ineffective assistance (Doc. 25, p. 8) ("it is

clear that 1. Trial counsel was ineffective, 2. New trial

counsel was ineffective, 3. Appellant counsel could have raised

the issue and 4. Rule 32 counsel was clearly ineffective for not

raising any and all issues to which Williams would have been

entitled to relief").  More pointedly, Williams argues that

"[i]n this case, regardless of whether new trial counsel,

appellant counsel or Rule 32 counsel, post-conviction counsel

failed to fully and completely review the record and raise all

claims available to Williams therefore [sic] the rule of

*Martinez* extends to this situation" (Doc. 25, p. 9).[4]

---

[3]This holding was not reached in a Section 2254 action, but in a
Motion for Relief from Final Judgment under Fed.R.Civ.P. 60(b).
    The updated *Hittson* cite is *Hittson v. GDCP Warden*, 759 F.3d
1210, 1261 (11th Cir. 2014), *cert. denied*, 135 S.Ct. 2126 (2015).
    Finally, *Coleman* references *Coleman v. Thompson*, 501 U.S. 722,
752 (1991).

[4]Petitioner's assertion (Doc. 25, pp. 9-10) that this "domino
effect" found a sympathetic voice in *Wessinger v. Cain*, 2012 WL
1752683, at *2 (M.D. La. May 16, 2012) under *Martinez* fails to
acknowledge that Court's finding of "a jurisprudential rule in

Petitioner has misread *Martinez*.  His interpretation would lead to—not an exception to, but—an evisceration of *Coleman*, offering a new path of federal review to every Section 2254 petitioner who claims, at each step of the judicial process, that no attorney provided him or her effective representation. *Martinez* offers no such opportunity as shown in its language: "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial."  *Martinez*, 132 S.Ct. at 1319.  Again, the undersigned finds that Williams has failed to demonstrate cause for his noncompliance with Alabama law under *Wainwright* and *Booker*.

Though it was determined that Petitioner failed to prove one of the two necessary requirements to overcome procedural default, the undersigned will, nevertheless, discuss the prejudice Williams asserts he suffered.  The main prejudice asserted was that his trial attorney did not reasonably investigate the possible testimony of Petitioner's son, Todd Norman, who could have been—but was not—called as a fact witness to corroborate his testimony and dispute that of the victim

Louisiana that ineffective assistance claims are generally best suited for post-conviction proceedings."  Louisiana law is inapplicable here.

9

(Doc. 1, pp. 7, 15, 19, 24; Doc. 10, pp. 4-6; Doc. 17, p. 8;

Doc. 25, pp. 1, 5, 12).  Williams's recitation of facts, as set

out in his Petition, are as follows:

> Mr. Williams was charged with one count
> of Rape in the First Degree, by forcible
> compulsion.  The State presented only one
> witness, [K.W.][5].  The state offered no
> documentary, medical, forensic or physical
> exhibits.  Defense counsel put on only one
> witness, Mr. Williams.  Defense counsel
> offered no documentary, medical, forensic or
> physical exhibits.  The complainant
> testified that sometime in January, 2008,
> she went to Mr. William's home, to go deer
> hunting.  Mr. Williams was her uncle, and
> she sometimes stayed at that home.  Aunt
> Laura (Williams's wife) and her cousin, Todd
> (Norman). (R-82, 83) also lived there.  She
> testified that she had been to the home the
> weekend before, with her brothers, Matt and
> Dylan, and two of their friends. (R-85)  The
> following weekend, she went to a hunting
> camp with Mr. Williams then came back to the
> Williams home to spend the night.  She slept
> on a couch in the living room. (R-86)
> She testified that in the morning/ she
> got up and went into the bathroom. (R-87)
> She testified that when she came out of the
> bathroom she passed a recliner chair in
> which Mr. Williams was sleeping.  She said
> Mr. Williams grabbed her and pushed her
> down.  Then that "he raped me." (R-89, 90 1
> 91)
> She then testified that he didn't say
> anything during the alleged attack/ however/
> afterward, pulled her towards him and told
> her not to tell anybody, because he didn't
> want to go to jail.  Also that he would kill

---

[5]The Court will use initials to identify the victim as she was
sixteen years old at the time of the rape (*see* Doc. 1, p. 6).

himself/ and that he wanted to take her to Mexico and marry her. (R-92)  She testified that there were no express threats made to her and that Mr. Williams later drove her home that day. (R-93)

On cross-examination, defense counsel Yazdi violated the trial court's previous ruling under the Rape Shield law, by asking her if she lost her virginity that day.  The prosecutor asked that Yazdi be held in contempt of court. (R-95)  Yazdi then attempted to question her as to whether her mother would not let her see her boyfriend. The Court disallowed the question, as based on hearsay. (R-96, 97)

The trial Court directed Yazdi not to question the complainant about prior sexual conduct, that he could explore whether she had reason to fabricate the rape complaint, because she was not allowed to see her boyfriend. (R-105, 106, 107).  This was because the theory of the defense was that she had fabricated the incident because Mr. Williams, later, in April, 2008, had confronted her about sneaking out of the Williams home, overnight, to visit her boyfriend. (R-113)  Inexplicably, Yazdi then decided to discontinue the cross-examination, although that line of inquiry was the linchpin of Mr. William's defense. (R-108)

The State then rested.  Mr. Williams testified in his own defense.  He testified that his niece had spent the night in the Williams home "too many (times) for me to count". (R-111)  He testified that he had never had sexual contact with her, and believed that she was making the incident up, because, on one occasion, months later, he confronted her about sneaking out of the house, at night, to see her boyfriend.

He testified that his son, Todd Norman, had opened the front door for her to come back in the next day while Mr. Williams and his wife were not home, and informed Mr.

Williams. (R113)  He testified to an
argument with complainant, where Mr.
Williams told complainant that he was going
to tell her mother.  Complainant called her
mother a "whore" (R. 120) and threatened him
that "she would say something about me if I
ever told her mom". (R-111, 112, 113)  He
testified that she continued to spend the
night at the Williams home, occasionally,
until the rape allegation occurred several
months later (April 2008). (R-117)
      Mr. William's son, Todd Norman was
available to testify at trial, prepared to
offer corroborative testimony.

(Doc. 1, pp. 11-13).

Petitioner states that the victim, at trial, testified that
she never snuck out of the house (Doc. 1, p. 6).  Williams
states his testimony, regarding this issue, was as follows:

"I said, you know, it's not going to happen
here.  You're not sneaking out of my home at
any given time.  And I jumped all over her
about it, you know, just like a dad with his
daughter.  It's not happening here, ever.
And she got mad at me and told me that she
would say something about me if I ever told
her mom." (R. 113)  The Petitioner had
testified that his son was the one who
alerted him that the witness/alleged victim
had snuck out:  "My son let her in.  He told
me about it." (R. 113).

(Doc. 1, p. 7).  Petitioner argues that his stepson's testimony
was necessary because "[t]rial counsel knew, or should have
known, that the trial court was going to instruct the jury that

12

they could convict solely on the testimony of the alleged victim and therefore should have know the importance of corroborative testimony" (Doc. 1, p. 24).

On August 11, 2011, a hearing was held on Williams's new attorney's Motion for a New Trial that included a claim of ineffective assistance of trial counsel (Doc. 6, Exhibit A, Volume 3, p. 55-108).[6]  Petitioner's stepson, Todd Norman, testified that his cousin, K.W., stayed at his house from time-to-time over a period of months in 2008-09 (*id.* at pp. 77, 79; *see generally* pp. 77-81).  One night, K.W. snuck out and came back the next morning and knocked on the door; his parents were not home, but Todd let her in.[7]  K.W. told him that she had been out the night before with her boyfriend, drinking at a bar (*id.* at p. 78).  Todd told his father about this the same day and he got on to her about sneaking out; Todd also told this information to Williams's trial attorney, one or two times, but he replied that he did not need to testify to this information because it would hurt Williams more than it would help him (*id.* at pp. 78-79).  The Witness testified that this event occurred way before his father was arrested (*id.* at 80-81).

---

[6]This cite reflects the way exhibits are numbered once submitted to this Court and do not correspond to any prior court's page numbers.

[7]The Witness did not testify that he lived with his mother and father but the Court, based on Williams's arguments herein, presumes that would have been his testimony.

The United States Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), defined the showing a habeas petitioner must make to prevail on an ineffective assistance claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. **Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.**

*Id.* at 687 (emphasis added). The undersigned will examine Williams's claims, focusing on the prejudice prong of *Strickland*.

The undersigned finds that the trial court attorney's failure to call Williams's stepson to testify did not prejudice him. The potential witness's testimony, at most, was as follows: that he allowed his cousin, the Victim, into the house one morning after she had snuck out the night before and drank in a bar with her boyfriend; that he told Williams about letting

14

her in; and that Williams told her not to sneak out again.  The
stepson did not testify as to any response—or threat—by his
cousin against Williams.  Likewise, he provided no information
whatsoever about the circumstances concerning the rape.  While
the potential witness's testimony would have duplicated some of
Petitioner's own testimony, it brought no new evidence before
the jury.  The undersigned finds that Williams has not
demonstrated that his trial attorney's decision not to call his
stepson to testify on his behalf has caused him "actual
prejudice" as required in *Strickland*.

Williams has also claimed that his trial counsel rendered
ineffective assistance in failing to properly investigate the
circumstances surrounding the incident for which he was
convicted.  Petitioner specifically asserts that his attorney
presented no physical, forensic, documentary, or medical
evidence on his behalf (Doc. 1, pp. 6, 11).

The undersigned notes that Williams, in his assertion of
facts, states that the alleged rape took place in January 2008,
that the Victim's threat against him took place in April 2008,
and that she did not report the rape until six months after it
allegedly happened (Doc. 1, pp. 6, 11-12).  The undersigned is
unsure what physical, forensic, documentary, or medical evidence
could have been brought to the jury's attention under those

circumstances.  In any event, Petitioner has not proffered any evidence to the Court and has not even suggested what might have been brought to the jury's consideration.

The undersigned notes that Petitioner argues, as part of his failure-to-investigate claim, that his attorney should have called witnesses to testify as to his good character (*see* Doc. 1, p. 21-24).  More specifically, Williams points to "potential witnesses familiar with aspects of the client's life history that might affect the likelihood that the client committed the charge offense(s), and the degree of culpability for the offense" (Doc. 1, p. 21).

The undersigned first notes that Petitioner has not indicated who might have been called or what their testimony might have been.  Furthermore, the undersigned reminds Williams that his trial attorney convinced the trial judge, in a pre-trial motion, to grant a motion in limine that barred the prosecuting attorney from presenting evidence of previous accusations of a sexual nature against Petitioner by two of his daughters unless it was in rebuttal to evidence submitted by Williams (*See* Doc. 6, Exhibit 1, pp. 61-66).  The trial attorney testified, at the hearing on a Motion for a New Trial, that he could not put on evidence of Petitioner's good character because

16

he knew it would allow the other evidence to be admitted (Doc. 6, Exhibit A, Volume 3, pp. 84, 86-91).

The undersigned finds that Williams has not demonstrated that his trial attorney's failure to investigate, including his failure to call witnesses to testify as to his good character, resulted in any prejudice to him under *Strickland*.

In summary, the undersigned finds that Petitioner has not shown the undersigned that his trial attorney rendered ineffective assistance under *Strickland*.  The undersigned further finds that Williams's appellate attorney did not render ineffective assistance in failing to raise an ineffective assistance of trial counsel claim as there was no merit to such a claim.

Having failed to meet the burden of demonstrating ineffective assistance of trial counsel, the undersigned further finds that Williams has failed to demonstrate that he was prejudiced by his attorney, as required by *Booker* and *Wainwright*.  The undersigned specifically finds that Petitioner has failed to meet his "burden of showing, not merely that the errors of his trial [counsel] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).[8]

The undersigned has found that Petitioner has failed to demonstrate "both cause for his noncompliance [with state procedural rules] and actual prejudice resulting therefrom" as required in *Booker* and *Wainwright*.

The undersigned again notes that Williams can also avoid the procedural default bar by showing that this Court's failure to consider his claims will result in a fundamental miscarriage of justice. *Engle v. Isaac*, 456 U.S. 107, 135 (1982); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986).  The *Engle* Court, however, noted that "any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining

---

[8]The Order referring this action back to the Magistrate Judge noted the undersigned's failure to "address the petitioner's contention that an Alabama appellate court 'f[ound] that had the claims of Williams been properly raised, Williams would probably had [sic] been entitled to relief.' (Doc. 17 at 6)" (Doc. 18, p. 3).

The undersigned did not address the uncited quote because it appeared in Petitioner's objections to the Report and Recommendation; it was not before the Magistrate Judge to consider.

The undersigned notes that no such language—or similar language—appears in the opinion by the Alabama Court of Criminal Appeals on direct appeal (Doc. 6, Exhibit 6), in the certificate of judgment entered by the Alabama Supreme Court on direct appeal (Doc. 6, Exhibit 7), in the opinion by the Alabama Court of Criminal Appeals on review of the denial of Williams's Rule 32 petition (Doc. 6, Exhibit 13), or in the certificate of judgment entered by the Alabama Supreme Court on Williams' Rule 32 petition (Doc. 6, Exhibit 14).  Petitioner's reassertion of the statement, now as undisputed (Doc. 25, p. 7), makes it no more true than when it was first uttered.

relief." *Engle*, 456 at 129.  The *Murray* Court went on to hold
that "in an extraordinary case, where a constitutional violation
has probably resulted in the conviction of one who is actually
innocent, a federal habeas court may grant the writ even in the
absence of a showing of cause for the procedural default."
*Murray*, 477 U.S. at 496.

The U.S. Supreme Court, in *Schlup v. Delo*, 513 U.S. 298,
324 (1995), has stated that, in raising an actual innocence
defense to a procedural bar, a petitioner must "support his
allegations of constitutional error with new reliable evidence—
whether it be exculpatory scientific evidence, trustworthy
eyewitness accounts, or critical physical evidence—that was not
presented at trial."  The evidence presented "must show that it
is more likely than not that no reasonable juror would have
found petitioner guilty beyond a reasonable doubt."  *Schlup*, 513
U.S. at 327.  In other words, Petitioner must persuade this
Court, "that, in light of the new evidence, no juror, acting
reasonably, would have voted to find him guilty beyond a
reasonable doubt."  *Schlup*, 513 U.S. at 329.  A court can
consider constitutional infirmities only after this threshold
has been met.

In this action, the undersigned notes that Petitioner
offers only assertions of his innocence.  The only offer of new

19

evidence was the testimony of Williams's stepson.  That evidence
has been reviewed herein and found a failure in demonstrating
any actual prejudice to Petitioner.  The undersigned cannot
find, after considering the testimony proffered by Todd Norman,
that "no juror, acting reasonably, would have voted to find
[Williams] guilty beyond a reasonable doubt."  Petitioner has
not satisfied his burden of demonstrating actual innocence under
*Schlup.*

Furthermore, the undersigned finds that this is not the
*extraordinary case* hypothesized in *Murray*.  Petitioner's theory
that he can bypass procedural default because the
ineffectiveness assistance of his Rule 32 attorney's failure to
claim ineffective assistance of the appellate attorney's failure
to raise ineffective assistance of the newly-appointed post-
conviction attorney's failure to raise ineffective assistance of
trial counsel fails with the undersigned's finding that Williams
has not demonstrated the ineffectiveness of his trial attorney
under *Strickland*.  The undersigned's finding that no prejudice
has been demonstrated in the trial attorney's failure to call
the stepson or character witnesses or in failing to submit
unspecified evidence leaves Petitioner's theory without a
properly established predicate.  This argument is without merit.

The undersigned finds that this Court's failure to consider

20

the merits of Williams's claims will not result in a fundamental
miscarriage of justice.  Furthermore, the undersigned finds that
Petitioner has made no showing of actual innocence and has not
overcome the procedural default problem presented.  The
undersigned finds that Petitioner has provided no cause for
ignoring the dictates of *Wainwright*'s instructions regarding
procedural default:  the claims brought in this action are
procedurally barred and their merit should not be considered.

Therefore, it is recommended that this habeas petition be
denied and that this action be dismissed.

Furthermore, pursuant to Rule 11(a) of the Rules Governing
§ 2254 Cases, the undersigned recommends that a certificate of
appealability (hereinafter *COA*) be denied.  28 U.S.C. foll. §
2254, Rule 11(a) ("The district court must issue or deny a
certificate of appealability when it enters a final order
adverse to the applicant").  The habeas corpus statute makes
clear that an applicant is entitled to appeal a district court's
denial of his habeas corpus petition only where a circuit
justice or judge issues a COA.  28 U.S.C. § 2253(c)(1).  A COA
may issue only where "the applicant has made a substantial
showing of the denial of a constitutional right."  28 U.S.C. §
2253(c)(2).  Where a habeas petition is denied on procedural
grounds, "a COA should issue [only] when the prisoner shows . .

. that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As Williams has procedurally defaulted in the state courts on the claims brought in this petition, a reasonable jurist could not conclude that this Court errs in dismissing the instant petition or that Petitioner should be allowed to proceed.  *Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further").

<u>CONCLUSION</u>

It is recommended that Petitioner's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be denied and that this action be dismissed.  It is further recommended that any certificate of appealability filed by Petitioner be denied as he is not entitled to appeal *in forma pauperis*.  Finally, it is recommended that judgment be entered in favor Respondent, Cynthia Stewart, and against Petitioner, Timothy Wayne Williams.

22

NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 7(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An

objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 20th day of June, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE